**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

BRADLEY IGNEY, DDS; and SANDRA IGNEY,

Plaintiffs,

v. CASE NO.: 23-CV-16642

BRANDON SCHWAB; KELLI SCHWAB; SHEPHERD CAPITAL LLC d/b/a SHEPHERD PREMIER SENIOR LIVING; SHEPHERD CAPITAL LLC RINGWOOD; SHEPHERD CAPITAL LLC HUNTLEY; and SHEPHERD CAPITAL LLC CRYSTAL LAKE,

Defendants.
________________________________________/

## COMPLAINT

COME NOW, Plaintiffs BRADLEY IGNEY, DDS ("Mr. Igney"), and SANDRA IGNEY ("Mrs. Igney") (collectively the "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendants BRANDON SCHWAB ("Brandon Schwab"), KELLI SCHWAB ("Kelli Schwab"), SHEPHERD CAPITAL LLC d/b/a SHEPHERD PREMIER SENIOR LIVING ("SC"), SHEPHERD CAPITAL LLC RINGWOOD ("SC Ringwood"), SHEPHERD CAPITAL LLC HUNTLEY ("SC Huntley"), and SHEPHERD CAPITAL LLC CRYSTAL LAKE ("SC Crystal Lake") (collectively the "Defendants"), and state as follows:

## SUMMARY OF THE CASE

This securities fraud case involves Defendants selling hundreds of thousands of dollars in unregistered promissory notes without meeting an exemption. Additionally, the Defendants engaged in the sale of securities without registering as broker-dealers with the United States Securities and Exchange Commission ("SEC") and made fraudulent misrepresentations during the offering of such securities to Plaintiffs. Thus, Defendants violated numerous securities laws, for which Plaintiffs seek both, injunctive relief and monetary damages.

## INTRODUCTION

1. This is a cause of action for violation of Sections 5, 12, and 15 of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c), 77l, and 77o], Section 10b [15 U.S.C. § 78j(b), Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] of the Securities Exchange Act of 1934, 815 ILCS 505/1, ch. 121 1/2, par. 137.5, and Section 2a, of the Illinois Securities Law of 1953, negligent misrepresentation, and breach of contract.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 to the extent this action arises under the Constitution, laws, or treaties of the United States.

3. This Court has jurisdiction over this proceeding pursuant to Section 4A(c) of the Securities Act of 1933 [15 U.S.C. § 78aa].

4. Venue is proper in this district pursuant to Section 22 of the Securities Act of 1933 [15 U.S.C. § 78aa] and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims made herein occurred in the Northern District of Illinois. In addition, all Defendants reside, transact business, and operate their principal place of business within this district.

5. All conditions precedent to this action have been performed, satisfied, or waived.

## PARTIES

6. Plaintiff BRADLEY IGNEY, DDS, is, and was at all times material hereto, an individual over the age of 18, *sui juris*, and a citizen of Indiana.

7. Plaintiff SANDRA IGNEY, is, and was at all times material hereto, an individual over the age of 18, *sui juris*, and a citizen of Indiana.

8. Defendant BRANDON SCHWAB, is, and was at all times material hereto, an individual over the age of 18, *sui juris*, and a citizen of Illinois.

9. Defendant KELLI SCHWAB, is, and was at all times material hereto, an individual over the age of 18, *sui juris*, and a citizen of Illinois.

10. Upon information and belief, Defendant SHEPHERD CAPITAL LLC d/b/a SHEPHERD PREMIER SENIOR LIVING, is, and was at all times material hereto, an Illinois Limited Liability Company, with its principal place of business in Illinois, with members, all of whom are individuals domiciled in and citizens of Illinois.

11. Upon information and belief, Defendant SHEPHERD CAPITAL LLC, RINGWOOD, is, and was at all times material hereto, an Illinois Limited Liability Company, with its principal place of business in Illinois, with members, all of whom are individuals domiciled in and citizens of Illinois.

12. Upon information and belief, Defendant SHEPHERD CAPITAL LLC, HUNTLEY, is, and was at all times material hereto, an Illinois Limited Liability Company, with its principal place of business in Illinois, with members, all of whom are individuals domiciled in and citizens of Illinois.

13. Upon information and belief, Defendant SHEPHERD CAPITAL LLC CRYSTAL LAKE, is, and was at all times material hereto, an Illinois Limited Liability Company, with its principal place of business in Illinois, with members, all of whom are individuals domiciled in and citizens of Illinois.

## STATEMENT OF FACTS

14. Defendant Brandon Schwab is the principal agent of and investor in Defendant SC, Defendant SC Ringwood, Defendant SC Huntley, and Defendant SC Crystal Lake (collectively the "Funds").

15. From the onset, Defendant Brandon Schwab was not transparent with his operations of and management of the Funds.

16. Upon information and belief, the Defendants entered into joint ventures to market and sell unregistered securities.

17. The Defendants are currently holding numerous unregistered securities in the name of the various Defendants and Funds.

18. Defendant Brandon Schwab offered and sold unregistered securities held in the names of the various Funds.

19. None of the Defendants are currently registered or have ever registered as broker-dealers with the SEC.

20. None of the Defendants have ever registered their proffered securities with the SEC.

21. None of the proffered securities are exempt from registration under 15 U.S.C. § 77r(b).

22. None of the Defendants are currently registered or have ever registered as a broker-dealer with the State of Illinois.

23. None of the Defendants have ever registered their proffered securities with the State of Illinois.

**I. Ringwood Project.**

24. Upon information and belief, Defendants began raising capital with respect to the existing assisted living facility located at 6809 Barnard Mill Rd., Ringwood, Illinois 60072 ("Ringwood Project").

25. Defendant Brandon Schwab and Defendant Kelli Schwab presented Mr. Igney with an informational presentation whereby Defendant Brandon Schwab offered Mr. Igney Five (5%) Percent equity in Defendant SC Ringwood.

26. Following the presentation, Defendant Brandon Schwab and Defendant Kelli Schwab urged Plaintiff to contact Defendant Brandon Schwab to make their investment promptly, so that they did not miss the opportunity to invest.

27. Plaintiffs performed their due diligence on the Ringwood Project, including visiting the Ringwood assisted living facility located at 6809 Barnard Mill Rd., Ringwood, Illinois 60072.

28. Based upon Defendants' representations, Plaintiffs contacted Defendant Brandon Schwab by phone and expressed their interest in investing, and further communicated through e-mail following the phone conversation.

29. Defendant Brandon Schwab communicated basic investment details to Plaintiffs and indicated that upon investment, the properties would be refinanced using "take out financing" and return the capital of Plaintiffs' investments.

30. Plaintiffs proceeded with transferring Four Hundred Thousand ($400,000) Dollars to Defendants for their investment in the Defendants' Ringwood Project.

31. The parties memorialized Plaintiffs' investment via a Partnership Agreement dated May 22, 2018, by and between Defendant SC Ringwood and Plaintiffs ("Ringwood

Agreement"), and a Promissory Note dated May 22, 2018 from Defendant SC Ringwood for the benefit of Plaintiffs ("Ringwood Note"). A complete and accurate copy of the Ringwood Agreement and Ringwood Note are attached hereto as Composite Exhibit "A" and made a part hereof.

32. In exchange for Plaintiffs' Four Hundred Thousand ($400,000) Dollar contribution into the Ringwood Project, Defendants agreed to pay to Plaintiffs their initial capital contributed into the Ringwood Project with simple interest at Ten (10%) Percent due annually in equal monthly installment payments and Five (5%) Percent equity in Defendant SC Ringwood due to Plaintiffs.

33. Beginning in May of 2018, Defendants paid to Plaintiffs approximately Three Thousand Three Hundred Thirty-Three and 33/100 ($3,333.33) Dollars, monthly, through December of 2019.

34. Unbeknownst to Plaintiffs, neither of the Defendants owned the Ringwood assisted living facility located at 6809 Barnard Mill Rd., Ringwood, Illinois 60072, but rather Defendant Brandon Schwab had only an option to purchase the property.

35. Plaintiffs relied upon Defendant Brandon Schwab's representations that Defendants owned the Ringwood assisted living facility located at 6809 Barnard Mill Rd., Ringwood, Illinois 60072 when making their contribution into the Ringwood Project.

**II. Huntley Project.**

36. Upon information and belief, beginning in early of 2018, Defendant Brandon Schwab and Defendant Kelli Schwab began raising approximately Two Million ($2,000,000) Dollars for the development of their Huntley Project with respect to the raw land located at Regency and Farm Hill Drive in Huntley near Del Webb ("Huntley Project").

37. Defendant Brandon Schwab directly contacted Plaintiffs to solicit capital to purchase the Huntley Project raw land located at Regency and Farm Hill Drive in Huntley near Del Webb.

38. Plaintiffs performed their due diligence on the Huntley Project, including visiting the Huntley raw land in the winter of 2019.

39. Following further communications with Defendant Brandon Schwab and relying on the promise of refinancing, Mr. Igney further invested with the Defendants in his individual capacity as well as in the name of his retirement account: Advanta IRA Services, LLC. fbo Bradley S Igney IRA Account #8007564.

40. The Parties memorialized Mr. Igney's subsequent investment via a Partnership Agreement dated March 6, 2019, by and between Defendant SC Huntley and Mr. Igney's IRA account (Advanta IRA Services, LLC fbo Bradley S Igney #8007564) ("Huntley Agreement"), and a Promissory Note dated March 6, 2019 from Defendant SC Huntley for the benefit of Mr. Igney's IRA account (Advanta IRA Services, LLC fbo Bradley S Igney IRA Account #8007564) ("Huntley Note"). A complete and accurate copy of the Huntley Agreement and Huntley Note are attached hereto as Composite Exhibit "B" and made a part hereof.

41. In exchange for Plaintiffs' Three Hundred Thirty Thousand ($330,000) Dollar contribution into the Huntley Project, Defendants agreed to pay to Plaintiffs their initial capital contributed into the Huntley Project with simple interest at Ten (10%) Percent due annually in equal monthly installment payments and Five-Point-Two-Eight (5.28%) Percent equity in Defendant SC Huntley due to Plaintiffs.

42. Eventually, Mr. Igney transferred Three Hundred Thirty Thousand ($330,000) Dollars to Defendants from his IRA account (Advanta IRA Services, LLC fbo Bradley S Igney IRA Account #8007564).

43. Beginning in April of 2019, Defendants paid to Mr. Igney approximately Two Thousand Seven Hundred Fifty ($2,750) Dollars, monthly, with respect to Mr. Igney's Three Hundred Thirty Thousand ($330,000) Dollar contribution.

44. Moreover, in exchange for Plaintiffs' Two Hundred Twenty Thousand ($220,000) Dollar contribution into the Huntley Project, Defendants agreed to pay to Plaintiffs their capital contributed into the Huntley Project with simple interest at Ten (10%) Percent due annually in equal monthly installment payments and an additional Three-Point-Five-Two (3.52%) Percent equity in Defendant SC Huntley due to Plaintiffs.

45. By wire dated February 27, 2019, Mr. Igney wired to the Defendants Two Hundred Twenty Thousand ($220,000) Dollars for his additional Three-Point-Five (3.52%) Percent equity in Defendant SC Huntley. A complete and accurate copy of the wire transfer is attached hereto as Exhibit "C" and made a part hereof.

46. In total, Plaintiffs contributed Five Hundred Fifty Thousand ($550,000) Dollars to the Defendants with respect to the purchase of the Huntley Project.

47. Beginning in May of 2018, Defendants paid to Mr. Igney approximately One Thousand Eight Hundred Thirty-Three and 33/100 ($1,833.33) Dollars, monthly, through December of 2019 with respect to Mr. Igney's Two Hundred Twenty Thousand ($220,000) Dollar contribution.

## III. Defendants stop making payments to Plaintiffs and communications become even more sporadic.

48. Initially, the Defendants provided Plaintiffs with access to an online investor portal to review details concerning their investments with the Defendants, including interest payments made to Plaintiffs.

49. However, the Defendants have since shut down that online investor portal.

50. Defendants missed payment deadlines, repeatedly making late payments to Plaintiffs; and eventually, they ceased making any payments to Plaintiffs.

51. Plaintiffs have not received any payments from the Defendants since December of 2019.

52. In spite of Plaintiffs' repeated requests for clarification and transparency, Defendant Brandon Schwab continued to stall his responses to Plaintiffs' various inquiries with respect to the nature of their investments. Eventually, Defendant Brandon Schwab would respond with another excuse to only further delay his obligations due and owing to Plaintiffs.

53. Defendant Brandon Schwab assured Plaintiffs, on multiple occasions, that the properties would be refinanced "by the end of the quarter" or "next week" or within the next "6 months" and then cash out the Plaintiffs.

54. However, when the end of each passing quarter and week came, the properties still were not refinanced, and the Plaintiffs' capital was not returned.

55. Defendant Brandon Schwab claimed the properties could not be refinanced due to the COVID-19 pandemic.

56. Now, Defendant Brandon Schwab is claiming the properties cannot be refinanced because interest rates are too high so the terms aren't good enough.

57. To date, the Plaintiffs have not received notice that the properties have been refinanced.

58. To date, the Plaintiffs' capital has not been returned.

59. In October 2023, Defendant Brandon Schwab finally delivered to Plaintiffs the long overdue statements reflecting their investments with Defendants for purposes of completing taxes for the 2022 tax year.

60. Defendant Brandon Schwab's October 2023 correspondence included several extensions and amendments to the various Promissory Notes which had been unilaterally executed by Defendant Brandon Schwab for which Plaintiffs learned of their existence for the first time. Complete and accurate copies of the extensions are attached hereto as Composite Exhibit "D" and made a part hereof.

61. One of the extensions unilaterally executed by Defendant Brandon Schwab purported to modify the maker under the Ringwood Note from Defendant SC Ringwood to Defendant SC Crystal Lake and simultaneously change the location of the original investment property from 6809 Barnard Mill Rd, Ringwood, IL to 5430 Hillside Rd, Crystal Lake, IL 60012.

62. One of the extensions unilaterally executed by Defendant Brandon Schwab purported to extend the Ringwood Note through May 22, 2023.

63. One of the extensions unilaterally executed by Defendant Brandon Schwab purported to extend the Huntley Note through March 6, 2024.

64. Defendants at no time received either of Plaintiffs' authorization to unilaterally execute the various extensions to the promissory notes.

65. The Defendants executed the Promissory Notes and Partnership Agreements with Plaintiffs which contained false representations. For example, the Defendants agreed to (a) make

monthly payments to Plaintiffs until all principal, interest, and other charges were satisfied, (b) provide monthly accounting reports and statements for all partners, and (c) deliver immediate payment of all unpaid principal and interest which has not been paid after thirty (30) days' notice of default. Yet, (a) late charges have incurred due to the Defendants' delinquent monthly agreed upon payments to Plaintiffs', (b) Plaintiffs' have not received monthly accounting reports or statements, and (c) Defendants failed to deliver immediate payment of all unpaid principal and interests following the Plaintiffs' thirty (30) days' written notice of default.

66. Defendant Brandon Schwab represented that he was to use the invested funds raised and received from Plaintiffs to purchase land, real estate, build, and refinance assisted living facilities, and even represented to Plaintiffs profits to be generated by renting the properties out to various tenants.

67. However, the Defendants have failed to refinance any of the investment properties in either the Ringwood Project or the Huntley Project.

68. Defendants at no time provided Plaintiffs with a Private Placement Memorandum, Subscription Agreement, risk disclosure, or other financial disclosures from any of the Defendants with respect to their investments.

69. Defendants repeatedly shifted the blame onto their accountant's lack of understanding of their business model – which they frequently switched out – for their failure to provide Plaintiffs with audited financials.

70. Plaintiffs were at no time ever vetted to be either an accredited or sophisticated investor.

71. Plaintiffs provided to the Defendants hundreds of thousands of dollars and did-in fact purchase unregistered securities offered by the Defendants.

72. As a direct and proximate cause of the Defendants' conduct described herein, Plaintiffs have suffered and continue to suffer damages including, but not limited to economic damages, damage to their reputation in the community, and ongoing damages.

73. On or about November 2, 2023, Plaintiffs caused the Notice of Default dated October 24, 2023, to be delivered to the Defendants advising them of their defaults and breaches which remain uncured.

74. By virtue of the foregoing conduct and as alleged further herein, the Defendants committed securities fraud, negligent misrepresentation, and breach of contract.

75. Unless the Defendants are restrained and enjoined, they will engage in the acts, practices, practices, transactions, and courses of business alleged forth in herein or in acts, practices, transactions, and courses of business of similar type and nature.

76. As a direct and proximate cause of the Defendants' conduct, Plaintiffs have been required to retain the undersigned counsel and incur necessary legal fees and costs.

**COUNT I**
**SELLING UNREGISTERED SECURITIES IN INTERSTATE COMMERCE IN VIOLATION OF SECTION 5(a) OF THE SECURITIES ACT OF 1933 (15 U.S.C. 77e(a))**
**ALL DEFENDANTS**

77. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

78. From 2018 until to-date, Defendants, without registration statements in effect as to the securities, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise.

79. Defendants' actions violate <u>15 U.S.C. § 77e(a).</u>

80. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

81. Plaintiffs have retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT II**
**FAILURE TO FILE NECESSARY REGISTRATION STATEMENT IN VIOLATION OF SECTION 5(c) of the SECURITIES ACT OF 1933 (15 U.S.C. § 77e(c))**
**ALL DEFENDANTS**

82. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

83. From 2018 until to-date, Defendants, without registration statements in effect as to the securities, directly or indirectly, made use of a means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of any prospectus or otherwise any security.

84. Defendants' actions violate 15 U.S.C. § 77e(c).

85. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

86. Plaintiffs have retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT III**
**SELLING A FRAUDULENT SECURITY IN VIOLATION OF 15 U.S.C. § 77l(a)**
**ALL DEFENDANTS**

87. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

88. From 2018 until to-date, Defendants knowingly offered and sold securities by use of a means or instruments or transportation or communication in interstate commerce or of the

mails, which contained untrue statements of material facts and omissions to state material facts necessary to make their statements not misleading.

89. Defendants' actions violate 15 U.S.C. § 77l(a).

90. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

91. Plaintiffs have retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT IV**
**CONTROLLING AND SELLING A FRAUDULENT SECURITY IN VIOLATION OF 15 U.S.C. § 77o(a)**
**DEFENDANTS BRANDON SCHWAB AND KELLI SCHWAB**

92. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

93. From 2018 to-date, Defendant Brandon Schwab and Defendant Kelli Schwab, knowingly and in connection with an agreement, controlled the Funds which offered and sold securities by use of a means or instrument of transportation or communication in interstate commerce or of the mails, which contained untrue statements of material facts and omissions to state material facts necessary to make their statements not misleading.

94. Defendant Brandon Schwab's and Defendant Kelli Schwab's actions violate 15 U.S.C. § 771o(a).

95. As a direct and proximate cause of Defendant Brandon Schwab's and Defendant Kelli Schwab's conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

96. Plaintiffs have retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT V**
**FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES IN VIOLATION OF SECTIONS 10(b) [15 U.S.C. §78j(b)] AND RULE 10b-5(a) AND (c) [17 C.F.R. § 240.10b-5(a) AND (c)] OF THE SECURITIES EXCHANGE ACT OF 1934**
**ALL DEFENDANTS**

97. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

98. Defendants, by engaging in the conduct described above, directly or indirectly, by the use or means of instrumentalities of interstate commerce or use of the mails, in connection with the purchase and sale of securities, (a) made a misstatement or omission, (b) of material fact, (c) with scienter, (d) in connection with the purchase or sale of securities, (e) upon which the Plaintiffs relied, and (f) that reliance proximately caused the Plaintiffs' injuries.

99. Consequently, Defendants used, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange employed a scheme to defraud Plaintiffs out of thousands of dollars.

100. Defendant Brandon Schwab initially told Plaintiffs that the properties they were investing in would be refinanced and that the Plaintiffs would receive the initial capital of their investments back upon refinancing.

101. Plaintiffs made their investments under the assumption that they would receive the initial capital of their investments back with the option to reinvest.

102. Refinancing on the invested properties did not and has yet to occur.

103. Plaintiffs have not received the initial capital back that they invested.

104. Defendants have, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, engaged in acts which operate as a fraud or deceit upon Plaintiffs.

105. Defendants' actions violate Sections 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c) of the Securities Act of 1934.

106. As a direct and proximate cause of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

107. Plaintiffs have retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT VI**
**FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES IN VIOLATION OF ILL. REV. STAT. 1979, CH. 121 1/2, PAR. 262, SECTION 2 OF THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**DEFENDANT BRANDON SCHWAB**

108. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

109. Defendants, by engaging in the conduct described above, directly or indirectly, used deceptive acts or practices, including by not limited to the use or employment of any deception fraud, false pretenses, false promises, misrepresentations or concealments, suppressions or omissions of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, and Plaintiffs have been misled, deceived, and damaged as a result.

110. Defendant Brandon Schwab committed fraudulent acts when he convinced the Plaintiffs to purchase securities under the assumption the properties would be refinanced, and that the Plaintiffs' initial capital would be returned with interest promptly.

111. Defendant Brandon Schwab's actions violate Ill. Rev. Stat. 1979, Ch. 121 1/2, par. 262 of Section 2 of the Consumer Fraud and Deceptive Business Practices Act.

112. As a direct and proximate cause of Defendant Brandon Schwab's conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

113. Plaintiffs have retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**
**ALL DEFENDANTS**

114. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

115. Defendants negligently misrepresented their intended use of Plaintiffs' funds; the proposed refinancing of the investment properties; and their credentials.

116. Defendants negligently misrepresented their ownership of the Ringwood assisted living facility located at 6809 Barnard Mill Rd., Ringwood, Illinois 60072.

117. Defendants made negligent misrepresentations and should have known their representations were false due to their failure to make payments owed to Plaintiffs; their failure to take proactive steps in securing the refinancing of the investment properties; their failure to register with either the SEC or the State of Illinois; and their lack of ownership in the Ringwood assisted living facility located at 6809 Barnard Mill Rd., Ringwood, Illinois 60072.

118. Defendants intended to induce Plaintiffs to act based upon their misrepresentations for which Plaintiffs did in-fact act by investing with the Defendants.

119. As a direct and proximate cause of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

120. Plaintiffs have retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT VIII**
**NEGLIGENT MISREPRESENTATION**
**SELLING UNREGISTERED SECURITIES IN VIOLATION OF CH. 121 ½, PAR. 137.5 OF THE ILLINOIS SECURITIES LAW OF 1953**
**ALL DEFENDANTS**

121. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

122. From 2018 to date, Defendants offered and sold unexempt securities in the State of Illinois not subject to any security exemption.

123. Defendants' actions violate Ch. 121 1/2, par. 137.5 of the Illinois Security Law of 1953.

124. As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

125. Plaintiffs have retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT IX**
**SELLING SECURITIES AS AN UNREGISTERED BROKER-DEALER IN VIOLATION OF SECTION 2a OF THE ILLINOIS SECURITIES LAW OF 1953**
**ALL DEFENDANTS**

126. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

127. From 2018 to date, Defendants transacted business selling unregistered securities as unregistered broker-dealers in the State of Illinois.

128. Defendants' actions violate Section 2a of the Illinois Securities Law of 1953.

129. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

130. Plaintiffs have retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT X**
**SELLING A FRADULENT SECURITY IN VIOLATION OF SECTION 12(G) OF THE ILLINOIS SECURITIES LAW OF 1953**
**ALL DEFENDANTS**

131. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

132. From 2018 to-date, Defendants offered and sold securities in writing which contained untrue statements of material facts and omissions to state material facts necessary to make their statements not misleading.

133. Defendants' actions violate Section 12(G) of the Illinois Securities Law of 1953.

134. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

135. Plaintiffs have retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT XI**
**BREACH OF CONTRACT**
**DEFENDANT SC RINGWOOD**

136. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

137. Defendants offered Plaintiffs equity in Defendant SC Ringwood in exchange for a capital investment.

138. Defendants entered into and executed valid Partnership Agreement for the benefit of Plaintiffs. *See Composite Exhibit A.*

139. Plaintiffs provided to Defendants valuable consideration in exchange for equity in various LLC's.

140. Plaintiffs satisfied all conditions precedent under the Partnership Agreement.

141. In violation of Paragraph 3 of the Partnership Agreement, Defendants failed to provide Plaintiffs with monthly accounting reports and statements.

142. In violation of Paragraph 4 of the Partnership Agreement, Defendants failed to pay the agreed upon monthly interest payments to the Plaintiffs.

143. The Defendants' conduct amounts to a material breach under the Partnership Agreement.

144. As a result of the Defendants' conduct, the Plaintiffs' obligations to perform under the Partnership Agreement are excused.

145. As a direct and proximate cause of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

146. Plaintiffs have retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT XII**
**BREACH OF CONTRACT**
**DEFENDANT SC RINGWOOD**

147. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

148. Defendants offered Plaintiffs repayment of their capital contribution with interest in exchange for capital investment.

149. Defendants entered into and executed a valid Promissory Note for the benefit of the Plaintiffs. See Ex. A.

150. Plaintiffs provided to Defendants valuable consideration in exchange for the Promissory Note.

151. Plaintiffs satisfied all conditions under the Promissory Note.

152. In violation of Paragraph 1 of the Promissory Note, Defendants failed to pay Plaintiffs all principal and interest due under the Promissory Note until the Promissory Note was paid in full.

153. In violation of Paragraph 6(A) of the Promissory Note, Defendants failed to pay late charges incurred for overdue monthly payments not received within ten (10) days of the monthly payment becoming due.

154. In violation of Paragraph 6(C) of the Promissory Note, Defendants failed to pay the full amount of principal which had not been paid, interest on the amount owed, or late charges incurred following thirty (30) days' notice of their default.

155. The Defendants' conduct amounts to a material breach under the Promissory Note.

156. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and will continue to suffer actual, material, and ongoing damages.

## COUNT XIII
## BREACH OF CONTRACT
## DEFENDANT SC HUNTLEY

157. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

158. Defendants offered Mr. Igney equity in Defendant SC Huntley in exchange for his capital investment.

159. Defendants entered into and executed valid Partnership Agreement for the benefit of Mr. Igney's retirement account: Advanta IRA Services, LLC. fbo Bradley S Igney IRA Account #8007564. *See Composite Exhibit B.*

160. Mr. Igney provided to Defendants valuable consideration in exchange for equity in Defendant SC Huntley.

161. Mr. Igney satisfied all conditions precedent under the Partnership Agreement.

162. In violation of Paragraph 3 of the Partnership Agreement, Defendants failed to provide Mr. Igney with monthly accounting reports and statements.

163. In violation of Paragraph 4 of the Partnership Agreement, Defendants failed to pay to Mr. Igney the agreed upon monthly interest payments due to Mr. Igney.

164. The Defendants' conduct amounts to a material breach under the Partnership Agreement.

165. As a result of the Defendants' conduct, Mr. Igney's obligations to perform under the Partnership Agreement are excused.

166. As a direct and proximate cause of the Defendants' conduct, Mr. Igney has suffered and will continue to suffer actual, material, and ongoing damages.

167. Plaintiffs have retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT XIV**
**BREACH OF CONTRACT**
**DEFENDANT SC HUNTLEY**

168. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 76 as if specifically set forth herein.

169. Defendants offered Plaintiffs repayment of their capital contribution with interest in exchange for capital investment.

170. Defendant SC Huntley entered into and executed a valid Promissory Note for the benefit of the Mr. Igney's retirement account: Advanta IRA Services, LLC. fbo Bradley S Igney IRA Account #8007564. See Ex. B.

171. Plaintiffs provided to Defendants valuable consideration in exchange for the Promissory Note.

172. Plaintiffs satisfied all conditions under the Promissory Note.

173. In violation of Paragraph 1 of the Promissory Note, Defendants failed to pay Mr. Igney all principal and interest due under the Promissory Note until the Promissory Note was paid in full.

174. In violation of Paragraph 6(A) of the Promissory Note, Defendants failed to pay to Mr. Igney late charges incurred for overdue monthly payments not received within ten (10) days of the monthly payment becoming due.

175. In violation of Paragraph 6(C) of the Promissory Note, Defendants failed to pay to Mr. Igney the full amount of principal which had not been paid, interest on the amount owed, or late charges incurred following thirty (30) days' notice of their default.

176. The Defendants' conduct amounts to a material breach under the Promissory Note.

177. As a direct and proximate result of the Defendants' conduct, Mr. Igney has suffered and will continue to suffer actual, material, and ongoing damages.

178. Mr. Igney has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs request that this Court enter a judgment against the Defendants and grant the following relief:

A. Find that the Defendants violated the registration provisions of the federal securities laws as alleged herein:

B. Issue a permanent injunction enjoining Defendants from violating Sections 5, 12, and 15 of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c), 77l(a), and 77o], Section 10b [15 U.S.C. § 78j(b), Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] of the Securities Exchange Act of 1934, 815 ILCS 505/1, ch. 121 1/2, par. 137.5, and Section 2a, of the Illinois Securities Law of 1953, and breach of contract.

C. Find that the Defendants violated the registration provisions of the State of Illinois as alleged herein;

D. Order the Defendants to disgorge all gains and to pay prejudgment interest thereon;

E. Award to Plaintiffs their compensatory damages;

F. Award to Plaintiffs their statutory damages;

G. Award to Plaintiffs their attorneys' fees and costs incurred in prosecution of this action; and

H. Award to Plaintiffs such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury on all issues triable by jury.

Dated this 11th day of December, 2023.

PINO LAW GROUP PLLC
99 South New York Avenue

Winter Park, FL 32789
Telephone: (407) 425 – 7831
Facsimile: (407) 206 – 6565
Email: Miranda@PinoLawGroup.com

*/s/ Miranda S. Ratcliffe*
MIRANDA S. RATCLIFFE, ESQ.
Florida Bar No: 1045588

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 11, 2023, I electronically filed the foregoing with the Clerk of Courts by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel of record identified on the Service List.

*/s/ Miranda S. Ratcliffe*
MIRANDA S. RATCLIFFE, ESQ.